(C. D. 719)

Brandon Corp. *v.* United States

United States Customs Court, Second Division

(Decided January 9, 1943)

*Joseph H. Choate, Jr.*, for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue*, special attorney), for the defendant.

Before Tilson and Kincheloe, Judges

Tilson, Judge: The suits listed in schedule A, hereto attached and made a part hereof, were filed by the plaintiff seeking to recover

certain sums of money alleged to have been illegally exacted as customs duties upon a certain importation of looms and parts thereof. Duty was levied upon said merchandise at the rate of 40 per centum ad valorem under paragraph 372 of the act of 1930, as textile machinery, not specially provided for. The plaintiff claims the same to be properly dutiable at only 20 per centum ad valorem under said paragraph 372 and the trade agreement with Great Britain, T. D. 49753, as textile machinery, finished or unfinished, not specially provided for, for textile manufacturing or processing prior to the making of fabrics or woven, knit, crocheted, or felt articles not made from fabrics.

This case has been submitted for decision upon the following stipulation:

The parties hereto, by their respective attorneys, hereby stipulate and agree as follows:

1. That the above suits Numbers 74203–K, 74204–K, 75186–K, and 77363–K be and they hereby are consolidated for the purposes of trial;

2. That the following are facts which would be adduced by proofs upon the formal taking of testimony herein on behalf of the respective parties: The merchandise under protest consists of the following:

1. One 300 inch reed space loom used to weave paper maker's fabrics, dryer felts or mats, from cotton and asbestos yarn.

2. One 204 inch reed space loom used to weave paper maker's fabrics, dryer felts or mats, from cotton and asbestos yarn.

3. Parts of said looms consisting of one Reed for said 300 inch loom; one Reed for said 204 inch loom; 26,000 Heald wires (Heddles); twelve 300 inch Heald frames; twelve 204 inch Heald frames; five sets of tappets and one set of spares; two sets of tappet plates; and two C. 1. change wheels for twelve picks per round.

As shown by the United States Department of Commerce statistics, "Foreign Commerce and Navigation of the United States," for the calendar years 1936, 1937, and 1938, the imports into the United States from the United Kingdom of looms and knitting machines and parts were as shown by exhibit A annexed hereto and made part hereof.

The domestic manufacture of looms in 1933, as shown by the United States Department of Commerce statistics, "Biennial Census of Manufactures—1937—Part I," amounted to 10,713 in number and $5,979,236 in value.

The annual production of piece goods in the United States by each of these, types of knitting machines during the years before the adoption of the trade agreements though much less than the production of textiles woven upon looms was substantial.

It was as follows:

As shown by the United States Department of Commerce Statistics for the year 1937, "Biennial Census of Manufactures—1937—Part I," the production of piece goods, made for sale, in the United States in the year 1937 was as follows:

*By circular knitting machines*
$43,744.871
*By flat knitting machines*
$13,844.439

Simultaneous with the issuance, on January 8, 1938, of a public notice by the Secretary of State of intention to negotiate a trade agreement with the Government of the United Kingdom he published and distributed, under the same date a "LIST OF PRODUCTS ON WHICH THE UNITED STATES WILL CONSIDER GRANTING CONCESSIONS TO THE UNITED KINGDOM, NEWFOUNDLAND, AND THE BRITISH COLONIAL EMPIRE." Upon this list the only applicable references were as follows:

| Par. No. | Commodity |
|---|---|
| 372 | Knitting, braiding, lace braiding, and insulating machines, and all other similar textile machinery, finished or unfinished, not specially provided for, and parts thereof, not specially provided for, wholly or in chief value of metal or porcelain. |
| 372 | Textile machinery, finished or unfinished, not specially provided for, and parts thereof, wholly or in chief value of metal or porcelain. |

It is hereby stipulated and agreed, that this stipulation shall be filed and shall become a part of the record of the trial of these suits with the same force and effect as if the respective parties hereto had made formal proof of the facts and exhibit hereby presented.

Paragraph 372 of the act of 1930, so far as here pertinent, reads as follows:

* * * knitting, braiding, lace braiding, and insulating machines, and all other similar textile machinery, finished or unfinished, not specially provided for, 40 per centum ad valorem; all other textile machinery, finished or unfinished, not specially provided for, 40 per centum ad valorem; * * *.

The provisions of the trade agreement with Great Britain, here pertinent, read as follows:

Textile machinery, finished or unfinished, not specially provided for, for textile manufacturing or processing prior to the making of fabrics or woven, knit, crocheted, or felt articles not made from fabrics (except worsted combs, bleaching, printing, dyeing, or finishing machinery, and machinery for making synthetic textile filaments, bands, strips, or sheets).

Textile machinery, finished or unfinished, not specially provided for, and not provided for heretofore in any item numbered 372 in this schedule (except worsted combs, machinery for making synthetic textile filaments, bands, strips, or sheets, looms, or bleaching, printing, dyeing, and finishing machinery, and not including any article of a class or kind with respect to which United States import duties have been reduced or bound against increase pursuant to any trade agreement heretofore concluded under sec. 350, Tariff Act of 1930, as amended).

The first provision above-quoted provides for a duty of 20 per centum ad valorem, while the second provision provides for duty at 25 per centum ad valorem.

Paragraph 372 of the act of 1930 contains no special provision for "looms" or "parts thereof," and since they are obviously one of the most important and typical forms of textile machinery, apparently it has never been questioned that they were dutiable under that part of paragraph 372 providing for textile mechinery and parts thereof, not specially provided for.

Counsel for the plaintiff states the question presented by this case, as follows:

> The question presented by each of these proceedings is whether, under the trade agreement with Great Britain, the looms and parts imported from Great Britain by the Brandon Corporation are dutiable at 20%, or remain unaffected ·by that agreement, and are still within the original Tariff Act of 1930, under which, if unmodified, they would have been dutiable at 40%.

We think this is a fair statement of the issue, but counsel for the plaintiff strenuously insists that the said trade agreement does modify paragraph 372 insofar as the present merchandise is concerned to the extent that the same is dutiable at only 20 per centum ad valorem.

Counsel for the plaintiff contends in his brief filed herein that since in the year 1933, immediately prior to the conclusion of the said trade agreement, the domestic manufacture of looms amounted to 10,713 in number and $5,979,236 in value, and during the 3 years immediately preceding the conclusion of said trade agreement looms imported from the United Kingdom amounted to practically nothing, that the negotiators of the said trade agreement could only have found that the domestic loom-making industry needed nothing approaching the 40 per centum duty provided for in paragraph 372.

While this argument may be plausible, it is by no means conclusive, since counsel admits in his brief that the said trade agreement was concluded upon the basis of bargaining between the two interested parties, and the trade agreement itself shows that this bargaining was not confined to textile machinery alone.

Counsel for the plaintiff also makes the following statement in his brief filed herein:

> The obvious purpose of the circulation of this bargaining list, was to insure that the domestic manufacturers of articles covered thereby, and in particular of the textile machinery referred to, should be informed that a reduction of duty was contemplated, and to bring out from them any reasons which could be given against such reductions. It demonstrates that our negotiators began with an actual intent to reduce the duties on textile machinery generally, unless such ·concessions were shown to be disadvantageous.

In general we are in agreement with the above statement, and an examination of said agreement with reference to textile machinery demonstrates that the negotiators did in fact accomplish the result which they set out to accomplish, but this does not mean that the negotiators were compelled to reduce the rate of duty on *all* textile machinery. What information the negotiators obtained from the domestic manufacturers which might have convinced them that it would be disadvantageous to reduce the rate of duty on all textile machinery, and in particular on looms and parts thereof, we are not advised. It is entirely possible that the information received from the domestic manufacturers of textile machinery convinced the negoti-

ators that they would not be able, and could not, accomplish their original intent with reference to *all* textile machinery. We do not wish to be understood as finding and holding that it was the original intent of the negotiators to reduce the duty on *all* textile machinery.

It is to be noted that at no place in the trade agreement is there any provision for parts of textile machinery, but we do not overlook the provision in paragraph 372 of the act of 1930 "That parts, not specially provided for, wholly or in chief value of metal or porcelain, of any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts." Therefore, whatever rate of duty we find applicable to the textile machinery in this case must also be applied to the parts thereof.

We agree with the contention of counsel for the plaintiff that the two paragraphs of the trade agreement, quoted above, "expressly, and by their very terms, cover (with specified exceptions) all textile machinery not previously or specially provided for." It is clear that the machines in question are not dutiable under the second paragraph of the agreement, above-quoted, since "looms" are expressly excepted from said paragraph. In fact no claim is made that they are dutiable under the second paragraph of the agreement.

The machinery in question was covered by and included within the provisions of paragraph 372 of the act of 1930, and it is covered by and included within the provisions of said paragraph at the present time unless it is removed therefrom by the terms of the trade agreement. If it is not removed from said paragraph by the terms of the trade agreement, then it is *specially provided* for in said paragraph.

The negotiators of the trade agreement were not required to reduce the duty upon *all* textile machinery, not specially provided for, which was originally covered by and included within the provisions of paragraph 372, and it is apparent from the language used in the trade agreement that it was not their intention to do so, for they have with great particularity reduced the rate of duty upon only such of said textile machinery as was used "for textile manufacturing or processing prior to the making of fabrics." According to the stipulation herein the machines involved in this case are used "to weave paper-maker's fabrics, dryer felts or mats, from cotton and asbestos yarn."

It seems to us that the paper-maker's fabrics, dryer felts or mats are made fabrics, and the process employed in producing such fabrics should be considered the making of such fabrics. Consequently the machine employed would be a machine for making such fabrics. It logically follows, therefore, that the machine employed for making such fabrics, cannot be considered a machine for textile manufacturing or processing prior to the making of the fabrics, for the simple reason that the making of such fabrics is not a textile manufacturing or

processing prior to the making of the fabrics. The work performed by these machines is the actual making of the fabrics, and the making of the fabrics is not a manufacturing or processing of the material entering into the fabrics prior to the making thereof. There is no evidence to show that these machines ever came in contact with the cotton and asbestos yarn prior to the time the said yarn entered the machines and was made into paper-maker's fabrics, dryer felts or mats.

The record is silent as to what manufacturing processes were applied to the cotton and asbestos, but it is a matter of common knowledge that nature does not produce cotton and asbestos in the form and shape of yarn. It was necessary to apply certain manufacturing or processing operations to the raw cotton and the raw asbestos to bring them to the state of yarn, and had these machines been employed in any one or more of these operations, then they would be textile machines for textile manufacturing or processing prior to the making of fabrics.

It cannot be denied that when these different operations were applied to the raw cotton and the raw asbestos, and to the resultant products of these different operations, they produced different articles, and in a sense, each operation *made* something. Each operation was undoubtedly a *making*, manufacturing, or processing operation, each operation bringing the materials, step by step, to the stage of the completed yarns which were used by the machines in question to weave paper-maker's fabrics, dryer felts or mats. Any and all the machines used in these operations up to but not including the machines which wove the paper-maker's fabrics, dryer felts or mats, were undoubtedly textile machinery, not specially provided for, for textile manufacturing or processing prior to the making of fabrics.

The machines which take these completed cotton and asbestos yarns and weave them into paper-maker's fabrics, dryer felts or mats, are not textile machinery for textile manufacturing or processing prior to the making of fabrics, are not included within the terms of the trade agreement, and are, therefore, not subject to the reduction in the rate of duty from 40 per centum ad valorem to 20 per centum ad valorem.

We have not heretofore referred to the provision "* * * woven, knit, crocheted, or felt articles not made from fabrics, * * *" contained in the trade agreement for the reason that whatever classification is given to the textile machinery, for textile manufacturing or processing prior to the making of fabrics, must also be applied to textile machinery for textile manufacturing or processing prior to the making of woven, knit, crocheted, or felt articles not made from fabrics.

For the reasons hereinbefore stated all the claims of the plaintiff are overruled. Judgment will be rendered accordingly.